# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>**8ᵀᴴ STREET VENTURE HOLDINGS, LLC**<br><br>Debtor | Chapter 7<br>Case No. 00188-ELG |
| **NAHEED GHASSEMI<br>REVOCABLE TRUST**<br><br>Plaintiff<br><br>v.<br><br>**8ᵀᴴ STREET VENTURE HOLDINGS, LLC,** *et al.*<br><br>Defendants. | Adv. Proc. No. 22-10005 ELG |

### TUCKER, NONG & ASSOCIATES AND LAWRENCE TUCKER
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, and through undersigned counsel, two of the Defendants, Tucker, Nong & Associates and Lawrence Tucker, move for summary judgment on counts I (Fraud), II (Negligence) and III (Breach of Fiduciary Duty) of the 2ⁿᵈ Amended Complaint and state the following in support:

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. By Deed dated February 18, 2015, recorded among the Land Records of the District of Columbia on February 20, 2015, as Document Number 2015015288, Janice Hinton, as Personal Representative for the Estate of Pauline E. Robinson, conveyed a fee simple interest in the property known as Lot 64 in Square 886 (the "Property") to 8th St. Ventures Holdings, LLC. See Ex. 1.

2. On August 31, 2016, a Deed of Trust and Security Agreement (recorded on September 2, 2016, as Document No. 2016090489) was granted by Debtor 8th St. Ventures Holdings, LLC, to John B. Connor and Robert B. Baumgartner, Trustees, for the benefit of Dashco, Inc., securing the Property for the repayment of a Note in the original principal amount of $1,000,000. This Deed of Trust was secured by Lot 64 in Square 886, which was the parent lot before it was subdivided into condominiums. See Ex. 2.

3. On February 9, 2018, a Refinance Deed of Trust (recorded on February 26, 2018, as Document No. 2018020181) was granted by borrower 8th St. Ventures Holdings, LLC, collectively, and Napoleon Ibiezugbe and Kevin Falkner, individually, for the benefit of the Ghassemi Trust, as Lender, securing the Property for the repayment of a Note in the original principal amount of $375,000 (the "Ghassemi DOT"). See **Ex. 3.**

4. The Ghassemi DOT appointed Lawrence Tucker as the Trustee. It did not appoint Tucker, Nong & Associates as an additional Trustee. *Id.*

5. All of the powers by the Trustee are outlined in the Deed of Trust.

6. The Deed of Trust is only for the benefit of Ghassemi and not for the benefit of any other third party. See Ex. 3 ¶ 4.3 which provides as follows:

> **No Third-Party Beneficiary Rights**. No Person not a party to this Deed of Trust shall have any benefit hereunder nor have third party beneficiary rights as a result of this Deed of Trust or any other Loan Document, nor shall any Person be entitled to rely on any actions or inactions of the Beneficiary or the Trustees, all of which are done for the sole benefit and protection of the Beneficiary.

7. Paragraph 1.9 of the Ghassemi DOT provides as follows:

> Title to all or any portion of the Secured Property **shall not be acquired by any Person other than the Grantor**, by voluntary or

2

involuntary conveyance, transfer, grant or assignment, by operation of law, or in any other manner, or, except for Permitted Liens, become encumbered or charged with a lien or security interest of any kind or variety, whether voluntary or involuntary, including any mechanic's or materialman's lien or judgment lien, senior, junior, or of equal priority to the lien and security interest of this Deed of Trust, **without the prior written consent of the Trustees or the Beneficiary**. The transfer or pledge of any ownership or voting interest in the Grantor, or the creation or issuance of additional ownership or voting interests which have the effect of diluting the then existing ownership or voting interests in the Grantor, shall constitute a prohibited transfer hereunder. The contrary notwithstanding, if the ownership of the Secured Property becomes vested in a person, individual, partnership, association, or corporation other than the Grantor, the Trustees or the Beneficiary may, without notice to the Grantor, deal with such successor or successors in interest with reference to this Deed of Trust and the Indebtedness in the same manner as with the Grantor, and any extension of the time of the Indebtedness or any other modifications of the terms of the Indebtedness at the instance of the then owner of the Secured Property shall not relieve the Grantor of the Grantor's liability on the Promissory Note hereby secured or from the performance of any of the covenants and agreements contained herein or any of the covenants, terms, conditions, provisions, representations, or warranties contained in the Loan Documents, whether the extension or modification be made with or without the consent of the Grantor.

See Ex. 3 ¶ 1.9.

8. However, nowhere does the Deed of Trust give the Trustee the power to encumber the property with a lien that is senior to the Ghassemi Trust. Indeed, to the contrary, the Trust instrument provides that the "transfer or pledge of any ownership or voting interest in the Grantor, or the creation or issuance of additional ownership or voting interests which have the effect of diluting the then existing ownership or voting interests in the Grantor, shall constitute a prohibited transfer hereunder." *Id.*

9. On March 29, 2018, a Refinance Deed of Trust, Assignment of Rents and

3

Security Agreement (recorded on April 2, 2018, as Document No. 2018032917) was granted by borrower 8th St. Ventures Holdings, LLC, and Napoleon Ibiezugbe and Kevin Falkner, as personal guarantors, to Lawrence Tucker, as Trustee, for the benefit of Regal Creations, LLC, as Lender, securing the Property for the repayment of a Note in the original principal amount of $400,000 (the "Regal Creations DOT"). See Ex. 4.

10. This was publicly recorded.

11. A Certificate of Satisfaction was recorded on April 6, 2018, executed by Dashco, Inc., stating that the August 31, 2016 Deed of Trust had been fully paid and satisfied. See Ex. 5.

12. On March 29, 2018, a Subordination Agreement (recorded on April 2, 2018 as Document No. 2018032918) was executed by and between the Ghassemi Trust, as Lender, and 8th St. Ventures Holdings, LLC, collectively, and Napoleon Ibiezugbe and Kevin Falkner, individually, as Borrowers, subordinating the Ghassemi DOT to the Regal Creations DOT (the "2018 Subordination Agreement"). See Ex. 6.

13. This was publicly recorded.

14. Plaintiff did not give either Tucker or Tucker and Nong any authority, apparent or actual, to enter into any Agreement on her behalf or to dilute her Interest in the Property. Compl. ¶ 17.

15. Tucker executed the Subordination Agreement only after the title company (who represented Ms. Ghassemi) represented to him that "they had express authority to subordinate." Tucker Tr. 24:19-21, 25-27.

16. On or about February 12, 2019, BCJCL, LLC ("BCJCL"), made a loan in the

amount of $517,500.00 to 8th St. Ventures Holdings, LLC. This loan included a payoff in the amount of $419,177.76 to satisfy the Regal Creations DOT.

17. On February 12, 2019, a Deed of Trust, Assignment of Rents and Security Agreement (recorded on February 13, 2019, as Document No. 2019015585) was granted by borrower 8th St. Ventures Holdings, LLC, to Chicago Title Insurance Company, as Trustee, for the benefit of BCJCL, LLC, as Lender, securing the Property for the repayment of a Note in the original principal amount of $517,500.00 (the "BCJCL DOT"). See Ex. 7.

18. On February 12, 2019, an Assignment of Deed of Trust was executed by BCJCL, LLC, assigning the BCJCL DOT to PS Funding, Inc. See Ex. 8.

19. On December 10, 2019, an Assignment of Deed of Trust (and Other Loan Documents) was executed by PS Funding, Inc., assigning to Eaglewood SPV I LP the BCJCL DOT. See Ex. 9.

20. On November 6, 2020, a Subordination Agreement (recorded on November 6, 2020 as Document No. 2020136200) was executed by Lawrence Tucker, as Trustee under the Ghassemi DOT, by and between the Ghassemi Trust, as Lender, and 8th St Ventures Holdings, LLC, collectively, and Napoleon Ibiezugbe and Kevin Falkner, individually, as Borrowers, subordinating the Ghassemi DOT to the BCJCL DOT (the "2020 Subordination Agreement"). See Ex. 10.

21. On July 16, 2021, an Involuntary Petition for Bankruptcy as to debtor 8th St. Ventures Holdings, LLC was filed in the United States Bankruptcy Court for the District of Columbia, filed by Eaglewood SPV I LP, with a claim in the amount of $669,507.74.

22. On December 29, 2021, an Assignment of Deed of Trust (and Other Loan

Documents) was executed by Eaglewood SPV I, LP, assigning to ICM Funding, LLC the BCJCL DOT. See Ex. 11.

23. On December 29, 2021, an Assignment of Deed of Trust (and Other Loan Documents) was executed by ICM Funding, LLC, assigning to Y&R 2022, LLC, the BCJCL DOT. See Ex. 12.

24. On March 18, 2022, a Motion to Sell Real Property Free and Clear of Any and All Liens was filed by Trustee Wendell Webster in Bankruptcy No. 21-00188-ELG (filed against Eaglewood SPV I LP). The Trustee requested leave to sell the Property for $625,000, with a commission of $31,250 to TTR Sotheby's International Realty and a carveout to the Estate in the amount of $50,000, and the proceeds to be held (following payment of the carveout, the realtor's commission, and all costs of sale), in an escrow account pending the resolution of lien priority issues.

25. On July 11, 2022, the Court entered an Order authorizing Mr. Webster, the Chapter 7 Trustee, to sell the Property free and clear of all liens and interests to Faraz Farokhzad, and further ordered that the "Remaining Proceeds" from the sale of the Property (as defined therein), be deposited into a separate deposit account to be held by McNamee Hosea, P.A., not for fees, but to be held in escrow pending further order of the Court and resolution of the instant dispute between the Ghassemi Trust and Y&R.

26. On August 2, 2022, following the sale of the Property, Mr. Webster moved to deposit the Remaining Proceeds from the sale of the Property, totaling $608,203.76, into the Court Registry, pending resolution of the instant Adversary Proceeding. See Case No. 21099188-ELG, [Dkt. 76].

27. On August 23, 2022, this Court granted Mr. Webster's request and ordered (1) that he is authorized to deposit all Remaining Proceeds into the Court Registry, (2) that the Clerk invest the Remaining Proceeds in the Court Registry Investment System, and (3) "that after the deposit of the Remaining Proceeds, the liens of Y&R 2022, LLC and the Naheed Ghassemi Trust shall attach to the Remaining Proceeds to the same extent and with the same priority as they attached to the Property." See Case No. 21099188-ELG, [Dkt. 80].

28. At her deposition, the Plaintiff admitted the following:

a. Plaintiff is a sophisticated businesswoman. Naheed Tr. 111:2-22; 115:3-22.

b. Plaintiff's brother, Farzad, advised her to lend money to potential real estate investors and introduced her to Mr. Tucker so that he may connect her with some of those investors interested in borrowing money from Plaintiff. Naheed. Tr. 64:15-22 & 65:1-5.

c. Plaintiff never engaged the services of either Lawrence Tucker or Tucker, Nong & Associates to represent her as attorneys. Naheed Tr. 70:8-13.

d. Plaintiff appointed Tucker in previous loan as Trustee on the Deed of Trust. Naheed Tr. 76:10-22 & 77:1-10.

e. All the papers were sent to her, and she signed them after she read them. Naheed Tr. 76: 7-10 & 77:3-21.

f. The Plaintiff knew that Mr. Tucker was an investor in properties in which she invested herself before she agreed to invest. Naheed Tr. 88:16-22; 89:1-22; 90:1-22; 239:9-22; 240:1-22; 241:1-22; 242:1-22.

g. The Plaintiff had no objections to any of the documents drafted by Tucker, Nong &

      Associates.  Naheed Tr. 104:15-20.

h. She received monthly interest payment as per the terms of the promissory note subject to this action though August 2021.  Naheed Tr. 175:12-21; 176:1-22; 177:1-22.

i. Plaintiff has no evidence that Tucker made any false representations of material fact.  Naheed Tr. 175:12-21; 176:1-22; 177:122; 178:1-22; 179:1-16.

j. Plaintiff's claim for fraud is based on the allegation that Mr. Tucker gave her an opinion that Napoleon and Falkner are "good people."  Naheed Tr. 179:15-181:16.

k. Mr. Tucker was not Plaintiff's lawyer.  Naheed Tr. 192:2-6; 230:2-14.

l. Plaintiff has asked Mr. Tucker to act as her trustee on a deed of trust in 2017. Naheed Tr. 199:3-206:12.

m. In 2020 Plaintiff asked a title company to conduct a title search.  Naheed Tr. 229:9-19; 230:2-14; 231:1-23-17; 233:1-22; 234-236; 252:13-22.

n. Plaintiff accepted late payments from Napoleon since 2018.  Naheed Tr. 242:1-22; 243:1-22; 244:1-22; 245:1-22.

o. In 2020 Bob Moses, Esquire, gave Plaintiff a title search that reflected that there was a subordination agreement recorded in the land records since 2018.  Naheed Tr. 247:1-22.

p. Plaintiff admitted that it was her mistake not to foreclose on the note from napoleon in 2020 when he stopped making timely payments.  254:14-22.

## **STANDARD OF REVIEW**

Summary judgment should be granted when there is no genuine issue as to any material

8

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "On a motion for summary judgment, the court must consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). "This standard provides the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is there be no genuine issue of material fact." *Id.* at 247-58. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, summary judgment should be denied only if there are "disputes over facts that might affect the outcome of the suit under governing law." *Id.*

Although the movant bears the initial burden of demonstrating the absence of all genuine issues of material fact, once the party moving for summary judgment meets its initial burden, then the nonmoving party "must identify the 'specific facts showing that there is a genuine issue for trial.'" *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also* Fed. R. Civ. P. 56(c); *Lyles v. United States Marshalls Serv.*, 301 F. Supp. 3d 32, 40 (D.D.C. 2018) (*citing Celotex*, 477 U.S. at 324). The nonmoving party "may not rest upon mere allegation or denials of [her] pleading." *Anderson*, 477 U.S. at 256. If the nonmoving party fails to proffer evidence to support his assertions, then the moving party may prevail by citing that "failure of proof." *Celotex*, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Furthermore, if the moving party "produces sufficient evidence to support its asserted inference, and the respondent fails to produce significantly probative evidence to counter the inference, disposition by summary judgment may be appropriate even though subjective factors such as motive or intent are the fact issues in question. *In re Gutierrez*, 528 B.R. 1, 7 (Bankr. D. Vt. 2014), (*citing Towle v. Hendrix (In re Hendrix)*, 352 B.R. 200, 204-205 (Bankr. W.D. Mo. 2006)).

## ARGUMENT

1. **NO CLEAR AND CONVINCING EVIDENCE OF FRAUD**:

As a matter of law, Fraud is never presumed and must be established by clear and convincing evidence. *Bennett v. Kiggins*, 377 A.2d 57, 60 (D.C. 1977) *cert. denied*, 434 U.S. 1034 (1978). The party claiming to have been defrauded is required to prove (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *Baker v. Baker*, 296 F. 961, 964 (1924); *Saucier v. Countrywide Homes Loan*, 64 A.2d 428, 438 (2013). "A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." *Saucier v. Countrywide Homes Loan*, 64 A.2d 428, 438 (2013) (citation and quotation omitted). "A misrepresentation is an assertion that is not in accord with the facts." *Id. quoting Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005). "A representation is material if it would likely induce a reasonable person to manifest his assent, or of the maker knows that it will likely induce the recipient to do so." *Id.* Where there is a duty to disclose, nondisclosure of material information or silence, just like an active misrepresentation, may constitute fraud. *Id. citing Payne v. Jamaica Nutrition Holdings, Ltd.*, 497

10

A.2d 118 (D.C. 1985). Indeed, "[M]ere silence does not constitute fraud unless there is a duty to speak." *Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1946).

In this case, Plaintiff has not provided any evidence to reveal the existence of any relationship between Plaintiff and Tucker & Associates, LLC that would support the conclusion that the Firm in any way owed her any duties to disclose any facts related to the alleged Deed of Trust or the Subordination Agreement. Indeed, the Deed of Trust provides otherwise. The only person appointed as Trustee is Lawrence Tucker. See Ex. 3. Similarly, Plaintiff's contention that she did know about Tucker being an investor before she agreed to lend the money to Ibiezugbe or Faulkner is contradicted by her own admissions under oath at her deposition. See ¶ 28 of the Statement of Undisputed Facts. Indeed, as admitted by Plaintiff at her deposition, at no time did Defendant Tucker or Tucker & Associates, LLC make any affirmative misrepresentations of material fact to Plaintiff. Any alleged misrepresentations were merely expressions of opinion.

Furthermore, there is no evidence that any relationship existed between Plaintiff and Defendant Tucker and Tucker & Associates, LLC that would impose a duty upon the firm to disclose any information to her in connection with the Subordination Agreements and as such she cannot claim that the firm somehow owed any duty to disclose any information to her. Inf act the evidence is tht eocntrary. Plaintff should have known about the Subordination Agremtn as they were public record, however she was solely responsible for ignoring the record and continuing to accept late payments by Ibiezugbe from 20189-2021.

Similarly, there is no evidence to support the conclusion that a relationship existed between Plaintiff and Defendant Tucker & Associates, LLC that would justify her reliance on any omissions made by the Firm.

Most importantly, there are no allegations that Plaintiff relied on any omissions by Tucker & Associates, LLC to her detriment or that there was an intend to defraud Plaintiff when any opinions were made.

Plaintiff bears the burden to allege such facts to reveal the existence of all the requisite elements of fraud. *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977). Mere allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient as a matter of law. Id. Furthermore, Plaintiff has failed to allege any facts to show that as a result of any acts or omissions by Tucker & Associates, LLC she was in any way injured. *Id.* In fact, the facts are to the contrary. *One on One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. 1988); *Hercules & Co. v. Shama Restaurant Corp.*, 613 A.2d 916, 923 (D.C. 1992).

2. **PLAINTIFF CANNOT PROVE HER CLAIMS FOR NEGLIGENCE**

In the District of Columbia, to prove any claim against a lawyer or a law firm, a plaintiff must establish: (a) an attorney-client relationship; (b) the applicable standard of care; (c) a breach of that standard; (d) and a causal relationship between the breach and the damages claimed. *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C. 1994) (emphasis added); *Herbin v. Hoeffel*, 806 A.2d 186, 194-95 (D.C. 2002).

To prove a duty, a deviation from that duty, and a causal relationship between the deviation and the harm alleged to have occurred in legal malpractice cases, expert testimony is required as matter of law. *See Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C. 1994). "'…[W]hen the subject dealt with is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, its clarification calls for the use of expert testimony." *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978) (internal citations omitted).

12

If a party fails to plead any of those elements, summary judgment must be granted. *Hopkins v. Atkins,* 637 A.2d 424, 428 (D.C. 1993)(duty must be proven); *Needham v. Hamilton,* 459 A.2d 1060, 1061 (D.C. 1983)(imposition of duty requires privity of contract with attorney, incidental beneficiaries are not owed a duty). In this case, there is no evidence whatsoever that at any time Plaintiff engaged the services of Tucker or the law firm to represent her in connection with the Deed of Trust or the Subordination Agreement. For this reason, there is no basis to impose any of the alleged duties against either the firm or tucker to sustain any tort claims alleged in this case.

Further, Plaintiff, "must demonstrate that the defendants' actions caused a legally cognizable injury. *McCord v. Bailey*, 636 F.2d 606, 611 (D.C. 1980) (internal citations omitted) (emphasis added); *see Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. Cir. 1949) (damages must be proven). Without proving proximate cause of any alleged injury, as a matter of law Plaintiff cannot prevail on a cause of action for negligence in this case. *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr., et al.*, 24 F. Supp. 2d 66, 74 *(citing Wolcott v. Ginsburg*, 746 F. Supp. 1113, 1116 (D.D.C. 1990); *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C. 1994)). Indeed, without the proof of damages a "plaintiff loses nothing by the conduct of her attorney even though the latter were guilty of gross negligence." *Macktal*, 111 F. Supp. 2d at 21 (q*uoting Niosi*, 69 A.2d at 60).

The facts in this case must be established through expert testimony. *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978)(…[W]hen the subject dealt with is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, its clarification calls for the use of expert testimony"); *Waggaman v. Forstmann*, 217 A.2d 310, 311 (D.C. 1966)(where the existence of substantial future economic loss becomes an issue, the use of expert testimony likely would be necessary since seldom will lay witnesses possess the requisite

background to testify on a matter such as this -- one not likely to be within the common knowledge of the average layman); *also see Steincamp v. Hodson*, 718 A.2d 107, 113-14 (D.C. 1998); *Hughes v. Pender*, 391 A.2d 259, 262-63 (D.C. 1978); *Jenkins v. United States*, 307 F.2d 637, 643 (D.C. App. 1962). In this case, Plaintiff has not designated any experts in the case and has not provided any opinions to support her claim that an attorney client relationship existed with the either Mr. Tucker of the law firm that imposed certain duties upon either of them that were somehow breached or that they caused her an of the alleged damages.

In that vein, in a case such as this, a breach of fiduciary duty claim also requires injury. *See, e.g., Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (2009) ("Breach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby."). However, Plaintiff ahs not shown that her injuries were in any way caused by the alleged acts or omissions of Tucker of the law firm and not the result of the acts or omissions of any other parties in this case.

In this jurisdiction "'a trustee under deed of trust owes fiduciary duties both to the noteholder and to the borrower.'" *Perry v. Virginia Mortgage and Inv. Co.*, 412 A.2d 1194 (D.C. App. 1980) (refusing to impose on the trustee under a deed of trust any general fiduciary duties)(quoting *S & G Investment Inc. v. Home Federal Savings and Loan Association*, 505 F.2d 370, 377 n.21 (D.C. 1974) (citing *National Life Insurance Co. v. Silverman* , 454 F.2d 899 (D.C. 1971); *Maynard v. Sutherland*, 313 F.2d 560, 565 n.16 (D.C. 1962); *Spruill v. Ballard*, 58 F.2d 517 (D.C. 1932)). The Trustees appointed pursuant to a Deed of Trust have only those powers and duties granted by the terms of instrument appointing them as a trustee and they do not have same discretion in exercise of duties as other trustees. *Id.* citing *National Life Insurance Co., supra* at

72, 454 F.2d at 915 (terms of instrument measure powers and duties of trustees); *Spruill, supra* at 114, 58 F.2d at 519 (trustees under a deed of trust derives powers from that instrument, "which is likewise the measure of his obligations, and provides the remedies for its own enforcement").

As a matter of law, a "trustee under a deed of trust with conventional provisions . . . is basically a trustee of a power to convey title under certain circumstances," and although the trustee must exercise such powers and duties with strict "fidelity to ethical principles . . . his management responsibilities fall short of those conferred on trustees generally." *S & G Investment Inc., supra* at 270 n.21, 505 F.2d at 377 n.21.

In this case, there is no evidence that the firm was a trustee. As for tucker, there is no evidence that he breached any of the fiduciary duties owed to Plaintiff when he executed the Subordination Agreement based solely on representation of her attorneys (the settlement company) that Ms. Ghassemi had already agreed to the Subordination. Indeed, if the fact finder finds that Ms. Ghassemi did in fact allow the subordination thought her attorneys (the settlement company) then Mr. Tucker could not be liable for the alleged damages in this case for executing the Subordination Agreement. If on the other hand the Court finds that Ms. Ghassemi did not consent to the Subordination, then, as a matter of law, any subordination agreements executed by Mr. Tucker are void as he lacked the express authority to execute the same.

3. **PLAINTIFF'S CLAIMS ARE BARRED BY CONTRIBUTORY NEGLIGENCE**.

In the district of Columbia, contributory negligence is a complete bar to recovery. *Lynn v. District of Columbia*, 734 A.2d 168, 172 (D.C. 1999); *General Elevator Co. v. District of Columbia*, 481 A.2d 116, 119 (D.C. 1984). Defendants can rely on such a defense if they establish

15

by a preponderance of the evidence that Plaintiff failed to exercise "reasonable care." *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997) (citing *Singer v. Doyle*, 236 A.2d 436, 438 (D.C. 1967)). In this case, as outlined in Paragraph 28 above, Plaintiff's own mistake, i.e. negligence, was a "substantial factor" in causing her injury. As such, as a matter of law, any alleged act or omission by Tucker o the firm's alleged additional acts or omissions will not negate the plaintiff's negligence so long as hers contributed in "some degree" to her injury. *George Washington Univ. v. Waas*, 648 A.2d 178, 180 (D.C. 1994) (quoting *Sinai v. Polinger Co.*, 498 A.2d 520, 528 (D.C. 1985)).

While typically, contributory negligence is a question of fact for the jury; in this case, the evidence, as admitted by Plaintiff at her deposition, is "so clear and unambiguous that contributory negligence should be found as a matter of law." *See Asal v. Mina*, 247 A.3d 260, 276 (D.C. 2021) (quoting *Washington v. A&H Garcias Trash Hauling Co.*, 584 A.2d 544, 547 (D.C. 1990)). Plaintiff cannot present any evidence to persuasively buttress the Plaintiff's own admissions of negligence beyond conclusory statements or establish "clear and convincing" causation.

In this case, there is no dispute that the plaintiff is a sophisticated investor. She was in the business of lending money. She voluntarily lent money to Ibeizugbe and Faulkner. She accepted payment from them over a long period of time even when they were late making payments. She had every opportunity, and the experience to foreclose, but she refused to do so and accepted the late payments. It her and her only acts or omissions that caused her any of the alleged damages.

She authorized her title company attorneys to subordinate her security so that she can collect the late payments from Ibiezugbe and Falkner. There is no dispute that Mr. Tucker only executed the Subordination Agreement based on representations from the Plaintiff's attorneys' and the issuer of the title insurance policy that she had agreed to subordinate her liens. Clearly, the

16

Deed of Trust did not vest Mr. Tucker with the right to subordinate the lien without the express authority of his principal. By accepting a Subordination Agreement without the express authority of the principal, the title insurance company that issued the policy clearly took a risk on behalf of the lenders. Thus, by making a misrepresentation to the Trustee that there was express authority from Plaintiff to subordinate, rendered any such agreement void on its face, as the lenders lent the money without express authority from Ms. Ghassemi. Mr. Tucker was only a trustee under a deed of trust, that did not vest him with the express authority to subordinate the interest of his principal without her express authority.

For these reasons Defendants, Tucker, Nong & Associates and Lawrence Tucker, move for summary judgment on counts I (Fraud), II (Negligence) and III (Breach of Fiduciary Duty) of the 2nd Amended Complaint.

Respectfully Submitted,

*/s/ Elias G. Saboura-Polkovotsy*
Elias G. Saboura-Polkovotsy, Esq.
D.C. Fed. Bar No.: 495693
**Saboura Goldman & Colombo, P.C.**
11200 Rockville Pike, Suite 120
North Bethesda, MD 20852
Phone: (301) 245-3234
Facsimile: (866) 232-0908
esaboura@sabouralaw.com
*Attorneys for Tucker, Nong & Associates and Lawrence Tucker*

# CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June 2023 (because June 19, 2023 was a holiday), I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who have registered for receipt of documents filed in this matter:

Harry M. Rivkin, Pro Hac Vice
Law office of Harry M. Rifkin
10 Long stream Court Unit 202
Baltimore, MD 21209

Justin P. Fasano
McNamee Hosea
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770

Wendell W. Webster
Webster & Fredrickson
1101 Connecticut Ave NW
Washington, DC 20036

David H. Cox
JACKSON & CAMPBELL, P.C. 2300 N Street, N.W., Suite 300
Washington, D.C. 20037

Elias G. Saboura-Polkovotsy, Esq.
**Saboura Goldman & Colombo, P.C.**
11200 Rockville Pike, Suite 120
North Bethesda, MD 20852

8th Street Venture Holdings, LLC
1425 H Street, N.E. 2nd Floor
Washington, DC 20002

Napoleon Ibiezugbe
4330 Junction Plaza Suite 164
Ashburn, VA 20147

Kevin Falkner
3800 Powell Lane, PH30
Falls Church, VA 22041

Benning, LLC

8133 Leesburg Pike, Suite 900
Vienna, VA 22182

Brian T. Gallagher
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street, 4th Floor
Annapolis, MD 2140 1

                              */s/ Elias G. Saboura-Polkovotsy*
                              Elias G. Saboura-Polkovotsy, Esq.
                              D.C. Fed. Bar No.: 495693
                              **Saboura Goldman & Colombo, P.C.**
                              11200 Rockville Pike, Suite 120
                              North Bethesda, MD 20852
                              Phone: (301) 245-3234
                              Facsimile: (866) 232-0908
                              esaboura@sabouralaw.com
                              *Attorneys for Tucker, Nong & Associates and Lawrence Tucker*