The order below is hereby signed.

Signed: May 29 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| In re: | Case No. 21-00188-ELG |
|---|---|
|     8th St. Venture Holdings, LLC, <br>        Debtor. | Chapter 7 |
|     Naheed Ghassemi Revocable Trust, <br>        Plaintiff, <br><br>        v. <br><br>     8th Street Venture Holdings, LLC, et al., <br>        Defendants. | Adv. Pro. 22-10005-ELG |

## <u>MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT</u>

The Court has before it cross-motions for summary judgment from both defendant Y&R 2022, LLC ("Y&R") and plaintiff Naheed Ghassemi Revocable Trust ("NGRT"). Y&R's *Motion for Summary Judgment*[1] seeks judgment on Count V of NGRT's *Second Amended Complaint*[2] ("Count V") and Count I of Y&R's counterclaims ("Counterclaim I").[3] The Court also has before it the portion of NGRT's Motion for Summary Judgment seeking judgment on the same counts.[4]

---

[1] Y&R's Mot. Summ. J., ECF No. 35.
[2] NGRT's 2d Am. Adversary Compl., ECF No. 7.
[3] Y&R's Am. Answer and Countercl., ECF No. 14.
[4] Count V and Counterclaim I each seek entry of a declaratory judgment establishing the lien priority on the proceeds of the sale of the property located at 1112 8th Street, N.E., Washington, D.C. 20002. *See* NGRT's 2d Am. Adversary Compl., ECF No. 7; Y&R's Am. Answer and Countercl., ECF No. 14; Y&R's Mot. Summ. J., ECF No. 35.

Subsequent to the hearing held August 10, 2023 (the "August 10 Hearing"), the Court bifurcated the above-captioned adversary proceeding with all counts (other than those decided herein) transferred to Adversary Proceeding No. 23-10027-ELG.[5] As part of the August 10 Hearing, the Court heard and denied summary judgment on the other counts due to the existence of genuine issues of material fact.[6] However, the cross-motions for summary judgment between NGRT and Y&R on Count V and Counterclaim I are ripe for determination. Upon consideration of the pleadings, the evidence, and the arguments from the August 10 Hearing, the Court finds that the NGRT DOT (defined below) was properly subordinated to the prior loan currently held by Y&R and that Y&R held a first position interest on the Property and the Excess Proceeds (both defined below).

## I.      Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[7]

## II.     Relevant Background

At issue herein is a lien priority dispute between Y&R and NGRT on certain real property as described *infra*. Although in the course of this Opinion the Court may refer to transactions for which either the details and/or facts remain in material dispute as to the Segregated Defendants (defined below), in this Opinion, the Court need not (and does not purport to) resolve the factual

---

[5] Order Approving Mot. for Leave to File 3d Am. Compl. & Severing Y&R and its Related Claims, ECF No. 82.

[6] Order Den. Summ. J., ECF No. 69.

[7] *See* Fed. R. Bankr. P. 7052. Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as the "Civil Rules."

disputes between NGRT and Lawrence Tucker, Esquire ("Mr. Tucker"), Benning, LLC ("Benning"), Napoleon Ibiezugbe ("Mr. Ibiezugbe"), and Kevin Falkner ("Mr. Falkner") (together, the "Segregated Defendants") and nothing herein should be construed to be a finding of fact related to such parties. To the extent that there is reference to a disputed fact, the Court refers to such fact as pled, in the light most favorable to the non-moving party, and without prejudice to any of the Segregated Defendants' rights to dispute such facts in any other litigation including the segregated causes of action.

   *a. The Property*

At all times relevant to this matter, 8th Street Venture Holdings, LLC (the "Debtor") was the owner of certain real property commonly known as 1111 8th Street, N.E., Washington, D.C. 20002 (the "Property").[8] The Property was purchased in February 2015 with the proceeds of a loan and an accompanying deed of trust, the specifics of which are not relevant herein. In August 2016, the Debtor refinanced its original loan with funds from Dashco, Inc. ("Dashco") in the original principal amount of $1,000,000 and granted a security interest to Dashco on the Property (the "Dashco DOT").[9] The Dashco DOT was subsequently released on April 6, 2018, being fully paid and satisfied.[10]

On or about February 9, 2018, NGRT made a $375,000 loan (evidenced by a confessed judgment balloon note) to the Debtor, Mr. Ibiezugbe, and Mr. Falkner, secured by a deed of trust junior to the Dashco DOT (prior to its release) on the Property recorded February 26, 2018 as instrument number 2018020181 (the "NGRT DOT").[11] The principal and trustee of NGRT,

---

[8] Prior to its subdivision into condominiums, the Property was identified as Lot 64 in Square 886. Ex. 1, ECF No. 35-1.
[9] Ex. 2, ECF No. 35-1.
[10] Ex. 5, ECF No. 35-1.
[11] Ex. 1, ECF No. 36-1, Ex. 3, ECF No. 35-1. In addition to the NGRT DOT, Mr. Ibiezugbe and Mr. Falkner individually entered into a guaranty and indemnification agreement in favor of NGRT. Ex. 2, ECF No. 36-2. Allegations related to this transaction by NGRT against the Segregated Defendants form the basis of the causes of

Ms. Naheed Ghassemi Abbas ("Ms. Ghassemi") was not in the business of loaning money secured by real estate, but was introduced to the borrowers and the transaction by Mr. Tucker of Tucker & Associates, PLLC (the "Tucker Firm"). While the exact nature of the relationship between Mr. Tucker and Ms. Ghassemi/NGRT is the subject of other litigation, it is clear that Ms. Ghassemi relied upon the representations made to her by Mr. Tucker in the decision to loan money to the Debtor, Mr. Ibiezugbe, and Mr. Falkner and in executing the various documents related thereto.[12] As part of the transaction, the NGRT DOT was prepared by the Tucker Firm. Of import to the issues herein is that the NGRT DOT names Mr. Tucker, a principal of the Tucker Firm, as the sole trustee of the NGRT DOT.[13]

Shortly after obtaining the loan from NGRT, on March 29, 2018, the Debtor, Mr. Ibiezugbe, Mr. Falkner, and Mr. Tucker borrowed $400,000 from Regal Creations, LLC ("Regal"), secured by a deed of trust on the Property recorded April 2, 2018, as instrument number 2018032917 (the "Regal DOT").[14] As part of that transaction, Mr. Tucker as trustee of the NGRT DOT unilaterally executed a subordination agreement (the "First Subordination Agreement") resulting in the subordination of the NGRT DOT to the Regal DOT.[15] The First Subordination Agreement was not executed by Ms. Ghassemi, but solely by Mr. Tucker as trustee. It is clear that Ms. Ghassemi was not on notice of and (but for any applicable language in the NGRT DOT) did not otherwise knowingly consent to the First Subordination Agreement. It is unclear if Ms. Ghassemi was ever on notice of the Regal DOT, but it is clear that at all times Ms. Ghassemi believed that NGRT held a first priority lien on the Property.

---

action segregated from this action. The Segregated Defendants have raised defenses and challenges to the allegations, none of which are relevant to the analysis herein.
[12] Ghassemi Tr. Apr. 27, 2023, at 68:5 to 69:13, ECF No. 49-2.
[13] *See* Ex. 3, ECF 35-1.
[14] *See* Ex 4, ECF 35-1.
[15] *See* Ex. 6, ECF No. 35-1.

On or about February 12, 2019, the Debtor obtained a $517,500 loan (the "BCJCL Loan") from BCJCL, LLC ("BCJCL") secured by a deed of trust (the "BCJCL DOT") recorded February 13, 2019.[16] As a result of the First Subordination Agreement, Regal was paid $419,177.76 at closing from the proceeds of the BCJCL Loan in full satisfaction of its loan while NGRT did not receive any payment. A subordination agreement was not executed at the time of the closing of the BCJCL Loan. Moreover, between the closing and the date of the filing of the Debtor's petition, the BCJCL DOT was assigned a number of times, with the final assignment to Y&R taking place on December 29, 2021 (the "Y&R DOT").[17] On November 6, 2020, as part of one of the intervening assignments, and upon the request of assignee Eaglewood SPV I LP ("Eaglewood"), Mr. Tucker, acting as trustee under the NGRT DOT, unilaterally executed a second subordination agreement (the "Second Subordination Agreement") ostensibly resulting in the subordination of the NGRT DOT to the BCJCL DOT (at the time held by Eaglewood as successor-in-interest).[18] It is clear that Ms. Ghassemi was not on notice of and (but-for any applicable language in the NGRT DOT) did not otherwise knowingly consent to the Second Subordination Agreement. The BCJCL Loan, BCJCL DOT, and Second Subordination Agreement were subsequently assigned to Y&R.[19]

As of the completion of each of the above transactions, the land records for the District of Columbia reflect the release of the Dashco DOT and Regal DOT and the following consensual liens on the Property: in first position, the BCJCL DOT held by Y&R, and in second position,

---

[16] Ex. 7, ECF No. 35-1.

[17] *See* Ex. 8, ECF No. 35-1 (assignment of BCJCL DOT to PS Funding, Inc.); Ex. 9, ECF No. 35-1 (assignment from PS Funding, Inc. to Eaglewood SPV I LP); Ex. 11, ECF No. 35-1 (assignment from Eaglewood SPV I LP to ICM Funding, LLC); Ex. 12, ECF No. 35-1 (assignment from ICM Funding, LLC to Y&R). There was no challenge to the validity of any of the assignments.

[18] *See* Ex. 10, ECF No. 35-1.

[19] NGRT does not challenge the validity of the assignments of the BCJCL DOT and related loan documents. The Court accepts that the assignments were valid, and that Y&R is the correct holder of the BCJCL DOT and related loan documents.

while first in time, the NGRT DOT subordinated to Y&R pursuant to the Second Subordination

Agreement.

### b.  The Bankruptcy

An involuntary chapter 7 petition was filed against the Debtor on July 16, 2021, and an

Order for Relief was entered on September 21, 2021.[20] On April 21, 2022, the Court approved,

with the consent of Y&R and NGRT, the sale by the chapter 7 trustee of the Property free and

clear of liens and encumbrances with all such claims attaching to the proceeds of the sale to the

same extent and with the same priority as they attached to the Property.[21] The sale order further

required that any excess proceeds from the sale after payment of certain approved amounts be held

in escrow pending resolution of the instant action.[22] On August 25, 2022, the chapter 7 trustee

deposited excess proceeds in the amount of $608,203.76 (the "Excess Proceeds") into the Court

registry pending resolution of this adversary proceeding.[23]

### c.  The Adversary Proceeding

On May 3, 2022, NGRT filed an adversary proceeding to, *inter alia*, resolve competing

claims to the Excess Proceeds.[24] After delays due to motions practice and amended pleadings, the

matter came before the Court on cross motions for summary judgment filed by Y&R and NGRT

on Count V of NGRT's second amended complaint as to Y&R and Counterclaim I of NGRT as to

Y&R. Because of the bifurcation of the case, the only remaining issue in the adversary proceeding

---

[20] Chapter 7 Involuntary Petition, *In re 8th St. Venture Holdings, LLC*, Case No. 21-00188-ELG (Bankr. D.D.C. July 16, 2021), ECF No. 1; Order for Relief in an Involuntary Case, *In re 8th St. Venture Holdings, LLC*, Case No. 21-00188-ELG (Bankr. D.D.C. Sept. 21, 2021), ECF No. 13.
[21] Order Granting Mot. to Sell Property Free & Clear of Any Liens & All Liens & Interests Pursuant to 11 U.S.C. Section 363(f), *In re 8th St. Venture Holdings, LLC*, Case No. 21-00188-ELG (Bankr. D.D.C. July 11, 2022), ECF No. 73.
[22] *Id.*
[23] Order Granting Mot. to Deposit Funds into Ct. Registry, *In re 8th St. Venture Holdings, LLC*, Case No. 21-00188-ELG (Bankr. D.D.C. Aug. 23, 2022), ECF No. 80.
[24] Compl., ECF No. 1.

is the resolution of the cross summary judgment motions.[25] The remaining counts were segregated and later dismissed without prejudice.[26]

The question before the Court is the priority of claims between Y&R and NGRT in the Property and Excess Proceeds prior to any distribution of the proceeds. Specifically, the issue is whether the unilateral execution by Mr. Tucker of the Second Subordination Agreement was valid and put Y&R in first priority position, or if the Second Subordination Agreement was invalid, whether it is nevertheless enforceable against NGRT as to Y&R. There is no dispute between the parties as to the content of the recorded documents. Further, the parties do not dispute that the documents control the question on summary judgment. While there are significant disputed facts between NGRT and the Segregated Defendants as to the creation of the documents and whether they reflect the understanding and agreement of the parties,[27] there are no disputed material facts as to Y&R and the recorded documents. Therefore, the Court can rule on summary judgment as to Count V and Counterclaim I.[28]

### III.    Discussion

#### a.  Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[25] *See* ECF Nos. 35 and 48. Mr. Tucker filed a Motion for Summary Judgment which was denied by order entered August 28, 2023, for reasons stated on the record as to genuine issues of material fact and which are not germane to the question herein. The claims against Mr. Tucker were then severed by order entered September 19, 2023.

[26] *See* ECF No. 82. The resolution of the segregated claims does not impact the question of the entitlement to the Excess Proceeds addressed herein.

[27] The Court recognizes that Ms. Ghassemi disputes whether the NGRT DOT appropriately reduced to writing the agreement reached between Ms. Ghassemi and the Tucker Firm but notes that this dispute falls within the scope of the bifurcated claims, and not in the instant matter.

[28] While this matter was under advisement, NGRT filed on the docket multiple pleadings titled supplemental motions for summary judgment. Y&R moved to strike the pleadings. Upon review, and after a hearing to determine the intent and substance, the Court determined that the pleadings were not further motions, but instead supplemental documents NGRT requested that the Court consider when determining the priority of liens. As set forth in the Order entered April 25, 2024, and consistent with Civil Rule 15 and in furtherance of judicial economy, the supplemental filings were included in the record for consideration herein. *See* ECF No. 108.

to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] A fact is material where it might affect the outcome of the suit under the governing law, and a dispute is genuine if resolution thereof could establish an element of a claim or defense and, therefore, affect the outcome of the action.[30] When evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party and accept the non-moving party's evidence as true.[31] The movant has the burden of showing that there is no genuine issue of fact, but the non-moving party is not thereby relieved of his own burden of producing in turn evidence that would support a judgment.[32] To the contrary, a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.[33]

    *b.  No Genuine Dispute of Material Fact*

      While the original complaint contains a substantial number of factual allegations, as stated above, those in genuine dispute were related to the Segregated Defendants and are not pertinent to Count V and the related counterclaims. The facts material to Count V and the related counterclaims are limited in scope, focusing on the recorded documents as to the Property, particularly the NGRT DOT and Second Subordination Agreement. The parties do not contest that the copies of the recorded documents in the record are true and accurate copies. The challenge is to the legal effect of certain language in the NGRT DOT and whether the unilateral actions of Mr. Tucker bound NGRT. Therefore, there are no genuine issues of material fact, and the Court will consider whether either NGRT or Y&R is entitled to judgment as a matter of law.

---

[29] Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Celotex*, 477 U.S. at 322.

[31] *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013).

[32] *Anderson*, 477 U.S. at 256.

[33] *Id.*

c.  *The NGRT DOT Granted Mr. Tucker Unilateral Authority to Execute a Subordination Agreement*

1.  *Legal Standard*

The NGRT DOT contains a choice of law provision selecting the laws of the Commonwealth of Virginia[34] to govern and determine all issues relating to the NGRT DOT and the rights and obligations of the parties thereto, including interpretation thereof.[35] Under Virginia law, a deed of trust is a type of contract, and the same interpretive principles apply.[36] Clear and unambiguous contract terms are construed according to their plain meaning, and there is a presumption that the parties have not used words needlessly.[37] A court may only look beyond the contract if the contract is ambiguous—meaning that the language may be understood in more than one way or when it refers to two or more things at the same time.[38] In determining whether disputed terms are ambiguous, the question is whether the words in the contract are used in accordance with their usual, ordinary, and popular meaning.[39] A dispute as to the meaning to be ascribed to

---

[34] The choice of law provision has an exception for the application of District of Columbia law as to "local enforcement remedies." Ex. 3 at 24, ECF No. 36-4. The standard under D.C. law does not differ in any material way from that of Virginia and would result in the same analysis and result as set forth herein. Under D.C. law, if a contract is clear and unambiguous on its face, a court will assume that the ordinary meaning applies to the intent of the parties. *See David & Hagner, P.C. v. DHP, Inc.*, 171 B.R. 429, 443 (D.D.C. 1994). If the contract is unambiguous, courts can and should interpret it as a matter of law. *See Partridge v. Am. Hosp. Mgmt. Co., LLC*, 289 F.Supp.3d 1, 21 (D.D.C. 2017) (citing *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 793 F.2d 356, 359 (D.C. Cir. 1986)). However, if the court determines the language is ambiguous, then the court may look to extrinsic evidence regarding intent. *See David & Hagner*, 171 B.R. at 443 (citing *E.P. Hinkel & Co. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C. Cir. 1974); *Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980)). Even if the provisions are reasonably or fairly susceptible to different constructions or interpretations, summary judgment may be appropriate as long as there is no evidence that would support a conflicting interpretation of the agreement. *See Partridge*, 289 F.Supp.3d at 21.

[35] Ex. 3 at 24, ECF No. 36-4.

[36] *See, e.g.*, *Squire v. Va. Hous. Dev. Auth.*, 758 S.E. 2d 55, 59–60 (Va. 2014) (citing *Va. Housing Dev. Auth. v. Fox Run Ltd P'shp*, 497 S.E. 2d 747, 753 (Va. 1998)).

[37] *Mathews v. PHH Mortg. Corp.*, 724 S.E. 2d 196, 201 (Va. 2012) (quoting *PMA Capital Ins. Co. v. US Airways, Inc.*, 626 S.E. 2d 369, 372–73 (Va. 2006)).

[38] *Ott v. L&J Holdings, LLC*, 654 S.E.2d 902, 905 (Va. 2008).

[39] *Video Zone Inc. v. KF&F Props., L.C.*, 594 S.E.2d 921, 923–24 (Va. 2004).

contractual language does not transform an unambiguous contract into an ambiguous one.[40] Words

of exclusion not contained within a contract cannot be read into a contract.[41]

> 2. *Relevant Sections of the NGRT DOT*

There are three paragraphs of the NGRT DOT relevant to determine whether Mr. Tucker,

as trustee, possessed the unilateral authority to execute and bind NGRT to the Second

Subordination Agreement without the knowledge, any other form of consent, or prior approval of

Ms. Ghassemi. The first, paragraph 1.9 titled "Transfer or Encumbrance," provides that there shall

be no superior lien granted on the property without the prior written consent of the trustee (*i.e.*,

Mr. Tucker) or the beneficiary (*i.e.*, Ms. Ghassemi).[42] The choice of the term "or" is material here,

providing either Mr. Tucker or Ms. Ghassemi the ability to consent in writing to a superior lien.

In the actions against the Segregated Defendants, Ms. Ghassemi asserts that it was never her intent

or desire to provide Mr. Tucker with the ability to act without her consent and alleges that Mr.

Tucker acted fraudulently in having the term "or" placed in the NGRT DOT. However, those

allegations are not relevant to the question in this matter where the document itself is not

---

[40] *Foothill Cap. Corp. v. E. Coast Bldg. Supp. Corp.*, 259 B.R. 840, 846 (E.D. Va. 2001).

[41] *See id.* (quoting *Montague Mfg. Co. v. Homes Corp.*, 128 S.E. 447, 450 (Va. 1925).

[42] Ex. 3 at 10, ECF No. 36-4. (1.9. <u>Transfer or Encumbrance.</u> **Title to all or any portion of the Secured Property shall not be acquired by any Person other than the Grantor, by voluntary or involuntary conveyance, transfer, grant or assignment, by operation of law, or in any other manner, or, except for Permitted Liens, become encumbered or charged with a lien or security interest of any kind or variety, whether voluntary or involuntary, including any mechanic's or materialman's lien or judgment lien, senior, junior, or of equal priority to the lien and security interest of this Deed of Trust, without the prior written consent of the Trustees or the Beneficiary.** The transfer or pledge of any ownership or voting interest in the Grantor, or the creation or issuance of additional ownership or voting interests which have the effect of diluting the then existing ownership or voting interests in the Grantor, shall constitute a prohibited transfer hereunder. The contrary notwithstanding, if the ownership of the Secured Property becomes vested in a person, individual, partnership, association, or corporation other than the Grantor, the Trustees or the Beneficiary may, without notice to the Grantor, deal with such successor or successors in interest with reference to this Deed of Trust and the Indebtedness in the same manner as with the Grantor, and any extension of the time of the Indebtedness or any other modifications of the terms of the Indebtedness at the instance of the then owner of the Secured Property shall not relieve the Grantor of the Grantor's liability on the Promissory Note hereby secured or from the performance of any of the covenants and agreements contained herein or any of the covenants, terms, conditions, provisions, representations, or warranties contained in the Loan Documents, whether the extension or modification be made with or without the consent of the Grantor.) (emphasis added).

ambiguous. By utilizing the word "or" between the terms "Trustees" and "Beneficiary," paragraph 1.9 clearly establishes that either party could provide written consent.[43]

Next, paragraph 4.1 titled "Substitute or Successor Trustees" provides that "the act of any one [t]rustee . . . shall be sufficient and effective for all purposes set forth herein."[44] Paragraph 4.1 further provides that any person may rely on any document executed and delivered solely by one trustee (if the trustee has authority to execute and deliver such document), concluding with the express statement that "any [t]rustee may act alone." The language makes clear that Mr. Tucker, as the only trustee ever appointed under the NGRT DOT, could individually sign documents "alone." When combined, paragraphs 1.9 and 4.1 establish that if Mr. Tucker had authority to grant consent on behalf of NGRT to a superior lien, his unilateral grant was sufficient to do so.

The third and final paragraph, paragraph 1.8 titled "Title to Real Property; Permitted Liens" establishes the authority of Mr. Tucker and/or Ms. Ghassemi to grant or consent to existing or future liens on the Property (*i.e.*, defines the scope of authority to act under paragraphs 1.9 and 4.1).[45] Importantly in this case, paragraph 1.8 contains three subparts regarding authority to

---

[43] *See Or*, Merriam-Webster, https://merriam-webster.com/dictionary/or (last visited May 21, 2025); *see also, Adams v. Tavenner*, 648 B.R. 800, 821 (E.D. Va. 2023) ("The Court applies the plain meaning rule to these provisions, focusing on the repeated use of the word 'or.' Defined as 'a function word to indicate an alternative,' courts have repeatedly held that 'or' is almost always disjunctive.'")

[44] Ex. 3 at 23, ECF No. 36-4. (4.1. <u>Substitute or Successor Trustees.</u> The irrevocable power to remove and substitute one or more of the Trustees named herein or substituted therefor is expressly given to the Beneficiary and may be exercised any time, or from time to time, without notice and without specifying any reason, by filing for record among the land records where this Deed of Trust is recorded a deed of appointment, and upon the filing of a deed of appointment all of the title and estate, powers, rights, and duties of the Trustee or the Trustees thus superseded shall terminate and shall be vested in the successor Trustee or the Trustees. The Grantor, the Beneficiary and the Trustees, their substitutes and successors, expressly waive notice of the exercise of this power, the giving of bond by any Trustee, and any requirement for application to any court for removal, substitution or appointment of a Trustee hereunder. In addition, the act of any one (1) Trustee, whether such Trustee is a sole acting Trustee or whether there is more than one (1) acting Trustee, shall be sufficient and effective for all purposes set forth herein and any Person may rely upon any document or instrument executed and delivered by one (1) Trustee, to the same extent as though the document had been executed by all of the Trustees. **Accordingly, any Trustee may act alone.**) (emphasis added).

[45] Ex. 3 at 10, ECF No. 36-4. (1.8. <u>Title to Real Property; Permitted Liens.</u> The Grantor warrants generally the Real Property, and the Grantor represents and warrants to the Beneficiary that as of the date hereof the Grantor has good and marketable title to the Secured Property free and clear of any and all liens, charges, restrictions, encumbrances, security interests and adverse claims whatsoever, other than liens, charges, restrictions, encumbrances or security interests which: (a) are set forth in any title insurance policy issued in favor of, and approved by, the Beneficiary with

11

approve or authorize pre-existing or future encumbrances. Subparts (a) and (c) specifically include the requirement that even if Mr. Tucker was to execute or approve an encumbrance, Ms. Ghassemi, as beneficiary, had to either approve an encumbrance found in a title report (subpart (a)) or expressly consent in writing to the lien (subpart (c)). Conversely, subpart (b) provides that there may be other encumbrances on the property if "permitted" as prior liens pursuant to another provision of the NGRT DOT. Each of the subparts includes the disjunctive "or" and stands as a separate type of permitted lien and must be read independently.[46] Subpart (b) does not include the limitation found in subparts (a) and (c) that only the beneficiary may "expressly permit" the lien or encumbrance. Instead, subpart (b) solely requires that an encumbrance must be authorized by the terms of the NGRT DOT, including by Mr. Tucker as trustee or Ms. Ghassemi as beneficiary individually without need for the other.

### 3. *The NGRT DOT Provided Mr. Tucker With Authority*

The three provisions of the NGRT DOT referenced above are clear and unambiguous.[47] The Court must presume that the terms were not used needlessly and must construe the same using their plain meaning.[48] The Court therefore construes the word "or" in paragraph 1.8(b) of the NGRT DOT as providing an alternative between either prior written consent of the trustee or of

---

respect to the Real Property; **(b) are expressly permitted as a prior lien or encumbrance pursuant to another provision of this Deed of Trust**; or (c) are otherwise expressly consented to in writing by the Beneficiary (the items described in the foregoing clauses (a), (b) and (c) are collectively referred to herein as "Permitted Liens"). The Grantor covenants and agrees that, at all times until the full payment and satisfaction of the Obligations and the termination of the Beneficiary's obligations under the Loan Documents, the Grantor shall (i) maintain good and marketable title to the Secured Property free and clear of any and all liens, charges, restrictions, encumbrances, security interests and adverse claims whatsoever, excepting only Permitted Liens and any subordinate liens on the Secured Property which may be consented to in writing by the Beneficiary from time to time, (ii) take all steps and do all things necessary, convenient, or proper to establish, protect, preserve, and maintain the priority and status of the lien and security interest in the Secured Property established or intended to be established by this Deed of Trust; and (iii) forever warrant and defend the Grantor's title to the Secured Property and the validity and priority of the lien and security interest of this Deed of Trust against the claims of any and all other Persons. The Grantor further warrants and covenants that the Grantor will execute such other and further assurances as may be requisite.) (emphasis added).
[46] *Or*, Merriam-Webster, https://merriam-webster.com/dictionary/or (last visited May 21, 2025).
[47] *Mathews*, 724 S.E. 2d at 201.
[48] *Id.*

the beneficiary—but not requiring both—for a superior lien to attach to the Property. Despite the limiting language "by the Beneficiary" being found only subparts (a) and (c), NGRT argues that the same at the end of paragraph 1.8(c) should also apply to paragraph 1.8(b) to require the beneficiary to expressly agree to a subsequent lien or encumbrance such as a subordination agreement. The Court cannot read words into existence in subpart (b) of paragraph 1.8.[49] As written, the NGRT DOT neither contains the limitation desired by NGRT, nor could the language of paragraph 1.8 be understood in more than one way nor refers to two or more things at the same time.[50] To read the phrase "by the Beneficiary" into subpart (b) would be to add language to the NGRT DOT that does not exist.

Paragraph 1.8(b) allows for the approval of a lien as a prior lien if provided in the provisions of the NGRT DOT. Paragraphs 1.9 and 4.1 clarify that Mr. Tucker had the unilateral authority to exercise rights under the NGRT DOT, including the authority granted by paragraph 1.8(b). Thus, when read together, paragraphs 1.8, 1.9, and 4.1 of the NGRT DOT provide Mr. Tucker with the authority to authorize the Second Subordination Agreement and the resulting subordination of the NGRT DOT to the Y&R DOT on the Property. As such, the Second Subordination Agreement is valid, and Y&R holds a first priority claim in the Excess Proceeds. NGRT retains a second priority claim in the Excess Proceeds.

Because the Court finds that the NGRT DOT provided Mr. Tucker with the actual authority to execute the Subordination Agreement, the Court does not need to reach NGRT's arguments as to any burden of due diligence or consideration of parol evidence surrounding the agreement.

---

[49] *Foothill*, 259 B.R. at 846.
[50] *Id.*

### IV.      Conclusion

For the reasons stated herein, the Court grants Y&R's Motion for Summary Judgment and denies NGRT's Motion for Summary Judgment. The Second Subordination Agreement was properly authorized and executed, resulting in Y&R holding a first priority lien in the Excess Proceeds with NGRT holding a second priority lien. A separate judgment order will enter.